# **EXHIBIT A**

## EXECUTIVE EMPLOYMENT AGREEMENT

This Employment Agreement is made as of December 20, 2011, by and between **Douglas J. Petersen** (the "Executive") and **Workers' Credit Union**, a Massachusetts credit union (the "Credit Union").

**WHEREAS**, the Credit Union desires to employ the Executive, and the Executive desires to be employed by the Credit Union on the terms specified herein; and

**WHEREAS**, the Executive's senior managerial position requires that he be trusted with extensive confidential information and trade secrets of the Credit Union and that he develop a thorough and comprehensive knowledge of all details of the Credit Union's business, including, but not limited to, information relating to research, development, inventions, purchasing, accounting, and marketing of the Credit Union's products and services;

**NOW, THEREFORE,** in consideration of the foregoing and the agreements herein contained, and intending to be legally bound, the parties hereby agree as follows:

1. Position and Responsibilities. The Executive agrees to serve as the Credit Union's Chief Executive Officer ("CEO"). The Executive agrees to devote all of his business time and efforts to the performance of his duties hereunder. The Executive shall at all times report to, and his activities shall at all times be subject to the direction and control of the Board of Directors of the Credit Union, and the Executive shall exercise such powers and comply with and perform, faithfully and to the best of his ability, such directions and duties in relation to the business and affairs of the Credit Union as may from time to time be vested in or requested of him.

2. Term. The parties agree that the Executive's employment with the Credit Union shall be on an "at-will" basis, which means that either the Executive or the Credit Union may terminate the employment relationship and this Agreement at any time, for any or no reason, with or without Cause (as defined below), with or without prior notice to the other party, but subject to Section 4 hereof.

3. Compensation and Benefits. As compensation for the satisfactory performance by the Executive of his duties and obligations hereunder to the Credit Union and subject to the provisions of Section 5, the Executive shall receive:

3.1. Base Salary. The Executive's initial salary shall be paid at a rate of $25,000.00 per month (the "Base Salary"). The Base Salary shall be payable in accordance with the customary payroll practices of the Credit Union as may be established or modified from time to time. The Board of Directors will endeavor to review the Executive's compensation no less than annually and in its sole discretion may adjust the Executive's salary at any time. All payments shall be subject to all applicable federal, state and/or local payroll and withholding taxes.

3.2     Bonus Plan. Executive shall be eligible to receive an annual cash bonus ("Bonus") of up to 35% of the current year's Base Salary based upon criteria determined solely by the Board of Directors after consultation with Executive. In order to be eligible to receive any annual Bonus, Executive must be employed on the date upon which the Bonus payment is made unless Executive is terminated other than for Cause or Executive terminates for Good Reason, in which event Executive shall be eligible to be paid a Bonus under the criteria pro-rated for the portion of the year employed. Any such Bonus shall be paid by the Credit Union in a single lump sum cash payment in accordance with its normal payroll practice by not later than the fifteenth day of the third month following calendar year with respect to which the services giving rise to the annual Bonus were rendered.

3.3.    Benefits. During Executive's employment, and subject to any contribution generally required of executives of the Credit Union, the Executive shall be eligible to participate in all employee health and benefits plans, as may be from time to time adopted by the Credit Union and in effect for executives of the Credit Union in similar positions. Executive's participation shall be subject to (i) the terms of the applicable plan documents, (ii) generally applicable Credit Union policies, and (iii) the discretion of the Board or any administrative or other committee provided for in, or contemplated by, such plan. In addition, the Executive shall be entitled to receive paid time off (PTO) in an amount consistent with the Credit Union's PTO policy. Such PTO shall be accrued and utilized in accordance with the Credit Union's PTO policy/practice as established and/or modified from time to time.

The Credit Union's plans and policies shall govern all other benefits. The Credit Union and/or the Board of Directors may alter, modify, add to, or delete its employee benefits plans and policies at any time as the Credit Union and/or the Board of Directors, in its or their sole judgment, determines to be appropriate.

3.4.    Business Expenses. The Credit Union shall pay or reimburse the Executive for all reasonable business expenses incurred or paid by the Executive in the performance of his duties and responsibilities hereunder, subject to (i) any reasonable expense policy of the Credit Union, as set by the Credit Union and/or the Board of Directors from time to time, and (ii) such reasonable substantiation and documentation requirements as may be specified by the Credit Union and/or Board of Directors from time to time.

3.5.    Split-Dollar Insurance. The Credit Union and the Executive have entered into a Split-Dollar Agreement, as amended, a copy of which is attached hereto as **Exhibit 1**.

4.      Termination of Employment. The Executive's employment and this Agreement shall terminate under the following circumstances:

4.1.    Death or Disability. In the event of the Executive's death or Disability (as defined herein) during the Executive's employment hereunder, the Executive's employment and this Agreement shall immediately and automatically terminate, and the Credit Union shall pay to the Executive (or in the case of death, the Executive's designated beneficiary or, if no beneficiary has been designated by the Executive, his estate), any Base Salary earned but unpaid through the date of death or Disability, and any accrued but unused vacation. Executive shall remain

eligible to be paid a Bonus under the criteria set forth in the Bonus plan, but pro-rated for the portion of the year actively employed. Any such pro-rated Bonus is to be paid in accordance with the Credit Union's normal payroll practice by not later than the fifteenth day of the third month following the calendar year with respect to which the services giving rise to the annual Bonus were rendered.. For the purposes of this Agreement, "Disability" shall mean any physical incapacity or mental incompetence (i) as a result of which the Executive is unable to perform the essential functions of his job for an aggregate of 120 days, whether or not consecutive, during any calendar year as determined by a medical professional, and (ii) which cannot be reasonably accommodated by the Credit Union without undue hardship.

      4.2.    By the Credit Union for Cause.

      (a)    The Credit Union may terminate the Executive's employment and this Agreement for Cause at any time. Upon termination for Cause, the Credit Union shall have no further obligation or liability to the Executive relating to the Executive's employment or this Agreement, other than any Base Salary earned but unpaid and accrued but unused vacation through the date of termination.

      (b)    The following events or conditions shall constitute "Cause" for termination of Executive's employment and this Agreement: (i) willful disregard to follow any material written rules or policies of the Credit Union; (ii) failure or refusal of the Executive to perform his duties hereunder; (iii) dishonesty, embezzlement, misappropriation of assets or property (tangible or intangible) of the Credit Union; (iv) gross negligence, misconduct, neglect of duties, theft, fraud, or breach of fiduciary duty to the Credit Union; (v) violation of federal or state securities laws; (vi) breach of an employment, consulting or other agreement (including, without limitation, the Employee Non-competition, Non-Solicitation, and Nondisclosure Agreement between the Executive and the Credit Union (the "Nondisclosure Agreement")); (vii) the unauthorized disclosure of any trade secret or confidential information of the Credit Union or any other act of disloyalty to the Credit Union; (viii) the commission of an act which constitutes unfair competition with the Credit Union or which induces any supplier to breach a material contract with the Credit Union; (ix) an immoral or dishonest act by the Executive which creates significant adverse publicity for the Credit Union, as determined by the Board of Directors in its sole and good faith discretion; or (x) the conviction of a felony, including a plea of guilty or nolo contendre.

      4.3.    By the Credit Union other than for Cause. The Credit Union may terminate the Executive's employment and this Agreement other than for Cause at any time. In the event of such termination, the Executive will be entitled to salary continuation at the Base Salary rate for a period eighteen (18) months from the termination date, to be paid in accordance with the Credit Union's payroll practice then in effect, with the first such payment beginning on the first pay period sixty days after the Executive's separation from service. If the Executive elects to continue medical insurance coverage after the termination date in accordance with the provisions of the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), then the Credit Union shall pay the Executive a cash amount equal to the Executive's monthly COBRA premium payment on the first day of each month during the period of the salary continuation payments or until the Executive accepts other employment, provided Executive is eligible to

participate in his new employer's health insurance plan.   If Executive becomes employed within the period of 18 months from the termination date for a salary less than the Base Salary earned prior to the termination of employment, Executive shall continue to receive the difference from the Credit Union so that in no event shall Executive receive less than his Base Salary for the period of 18 months post termination other than for a termination for Cause, by Executive for other than Good Reason, or for death or disability. The first such monthly payment shall begin on the first pay period sixty days after the Executive's separation from service and shall include any monthly payment that became due before such payment. The Credit Union shall have no other obligations to the Executive upon termination of employment other than for Cause.

The Credit Union's obligation to provide any of the amounts and benefits hereunder shall be subject to, and conditioned upon, the Executive's execution of a full release of claims satisfactory to the Credit Union, releasing the Credit Union and its employees and agents from any claims arising from or related to the Executive's employment or severance from employment with the Credit Union, including any claims arising from this Agreement. No payment of severance shall be required unless these conditions are satisfied. Any negotiations and/or revisions made or to be made to the release of claims and/or severance agreement to be executed at the time of termination shall not affect or extend the 21-day period under the Older Workers Benefit Protection Act, whether such revisions are material or immaterial.

    4.4 <u>By the Executive for Good Reason</u>.  If the Executive terminates his employment for Good Reason (as defined herein), he shall be entitled to the severance benefits set forth in Section 4.3, provided he complies with the release requirement specified in Section 4.3. For purposes of this Agreement, "Good Reason" shall exist upon (i) mutual written agreement by Executive and the Credit Union that Good Reason exists; (ii) demotion of Executive from the position of CEO, without his prior written consent; (iii) reduction in Executive's authority and/or responsibilities as CEO, without his prior written consent; (iv) reassignment of Executive to a place of business more than 35 miles from the place of business where he currently works for the Credit Union; (v) any material breach by the Credit Union of this Agreement; or (vi) a reduction in Executive's salary and the value of his benefits of greater than 5%, unless such reduction is applied equally to all executives of the Credit Union.

    4.5 <u>By the Executive for other than Good Reason</u>. If the Executive chooses to terminate his employment with the Credit Union for any reason other than Good Reason, the Credit Union shall have no further obligation or liability to the Executive relating to the Executive's employment or this Agreement, other than for Base Salary earned but unpaid and accrued but unused vacation through the date of termination.

  5. <u>Effect of Termination</u>. The provisions of this Section 5 shall apply in the event of termination of this Agreement and/or the Executive's employment pursuant to Section 4.

    5.1. <u>Payment in Full</u>. Payment by the Credit Union to the Executive of any Base Salary and other compensation amounts as specified in Section 4 shall constitute the entire obligation of the Credit Union to the Executive, except that nothing in this Section 5.1 is intended or shall be construed to affect the rights and obligations of the Credit Union, on the one hand, and the Executive, on the other, with respect to any loans or other agreements to the extent

said rights or obligations survive the Executive's termination of employment under the provisions of documents relating thereto.

    5.2.    <u>Termination of Benefits</u>. Except for any right of continuation of benefits coverage to the extent provided by this Agreement and/or COBRA, or other applicable law, benefits shall terminate pursuant to the terms of the applicable benefit plans as of the termination date of the Executive's employment.

    5.3    <u>Cessation of Severance and Benefits</u>. If the Executive breaches his obligations under this Agreement and/or the Nondisclosure Agreement, the Credit Union may immediately cease payment of all severance and benefits described in this Agreement. The cessation of these payments shall be in addition to, and not as an alternative to, any other remedies at law or in equity available to the Credit Union, including the right to seek specific performance or an injunction.

    6.    <u>Non-competition, Non-Solicitation, and Nondisclosure Obligations</u>. As a condition of the Credit Union entering into this Agreement, the Employee agrees to execute the Credit Union's Employee Non-competition, Non-Solicitation, and Nondisclosure Agreement (the "Nondisclosure Agreement"), attached hereto as **Exhibit 2**. The obligations of the Executive under the Nondisclosure Agreement expressly survive any termination of the Executive's employment, regardless of the manner of such termination, or termination of this Agreement.

    7.    <u>Conflicting Agreements</u>. The Executive hereby warrants that the execution of this Agreement and the performance of his obligations hereunder will not breach or be in conflict with any other agreement to which or by which the Executive is a party or is bound and that the Executive is not now subject to and will not enter into any agreement, including, without limitation, any covenants against competition or similar covenants that would affect the performance of his obligations hereunder.

    8.    <u>Withholding; Taxes</u>. All payments made by the Credit Union under this Agreement shall be subject to and reduced by any federal, state and/or local taxes or other amounts required to be withheld by the Credit Union under any applicable law.

    9.    <u>Miscellaneous</u>.

    9.1.    <u>Assignment</u>. The Executive shall not assign this Agreement or any interest herein. The Credit Union may assign this Agreement and it is specifically understood and agreed that no such assignment by the Credit Union shall be deemed to be a "termination" of the Executive's employment with the Credit Union within the meaning of Section 4 hereof. This Agreement shall inure to the benefit of the Credit Union and shall be binding upon the Credit Union and the Executive, and their respective successors, executors, administrators, heirs and permitted assigns. If Executive is required to work for another credit union in a merger with Credit Union and the continuing credit union is not controlled by a board of directors with a majority of directors who were formerly directors of the Credit Union, Executive may resign within six (6) months of the merger for any reason or no reason at all, and such resignation shall constitute a termination of employment "By Executive for Good Reason" as set forth in Section 4.4. Notwithstanding the provisions of Sections 4.3 and 4.4, however, Executive shall be entitled

to receive the severance and benefits set forth in Section 4.3 for a period of twenty-four (24) months, rather than 18 months.

9.2. Severability. If any portion or provision of this Agreement shall to any extent be declared illegal or unenforceable by a court of competent jurisdiction, then the application of such provision in such circumstances shall be modified to permit its enforcement to the maximum extent permitted by law, and both the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable and the remainder of this Agreement shall not be affected thereby, and each portion and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

9.3. Waiver; Amendment. No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party. The failure of the Credit Union to require the performance of any term or obligation of this Agreement, or the waiver by the Credit Union of any breach of this Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach. This Agreement may be amended or modified only by a written instrument signed by the Executive and/or an authorized member of the Board of Directors.

9.4. Notices. All notices, requests and other communications provided for by this Agreement shall be in writing and shall be effective when delivered in person or three (3) business days after being deposited in the mail of the United States, postage prepaid, registered or certified, and addressed (a) in the case of the Executive, to the address set forth underneath his signature to this Agreement or (b) in the case of the Credit Union, to the attention of the Chairman of the Board, C/O Workers' Credit Union, 815 Main Street, Fitchburg, MA 01420, and/or to such other address as either party may specify by notice to the other.

9.5. Entire Agreement. This Agreement and the Non-competition, Non-Solicitation, and Nondisclosure Agreement constitute the entire agreement between the Credit Union and the Executive with respect to the terms and conditions of the Executive's employment with the Credit Union and supersede all prior communications, agreements and understandings, written or oral, between the Executive and the Credit Union with respect to the terms and conditions of the Executive's employment with the Credit Union.

9.6. Counterparts. This Agreement may be executed in counterparts, each of which shall be original and all of which together shall constitute one and the same instrument.

9.7. Governing Law. This Agreement, the employment relationship contemplated herein and any claim arising from such relationship, whether or not arising under this Agreement, shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts without giving effect to any choice or conflict of laws provision or rule thereof.

9.8. Consent to Jurisdiction. Each of the Credit Union and the Executive, by its or his execution hereof, hereby irrevocably submits to the exclusive jurisdiction of the state or federal courts of the Commonwealth of Massachusetts for the purpose of any claim or action arising out of or based upon this Agreement, the Executive's employment with the Credit Union

and/or termination thereof, or relating to the subject matter hereof, and agrees not to commence any such claim or action other than in the above-named courts.

10.     409A Compliance.  Notwithstanding any provision of this Agreement to the contrary, this Agreement is intended to be exempt from or to comply with the requirements of Code Section 409A and the Treasury regulations and other applicable guidance issued by the Treasury Department and/or the Internal Revenue Service (collectively, "Section 409A"), and shall be interpreted and administered consistent with such intent.  The Credit Union shall have no obligation to the Executive in the event of any failure of any payment or permitted deferral under the Agreement or any plan or agreement described in the Agreement to comply with Section 409A.  To the extent required for compliance with the requirements of Section 409A, references in the Agreement to a termination of employment shall mean a "separation from service" as defined by Section 409A.

**IN WITNESS WHEREOF**, this Agreement has been executed by the Credit Union, by its duly authorized representative, and by the Executive, as of the date first above written.

**WORKERS' CREDIT UNION**

By: _____

Name: James E. Rosse

Title: Chairman

**THE EXECUTIVE**

_____
Signature

_____
Douglas J. Petersen

ADDRESS: